IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SARAH C. FULCHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV00613 |
| | ) | |
| R. JAMES NICHOLSON, Secretary | ) | |
| Department of Veterans Affairs, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM OPINION</u>

OSTEEN, District Judge

Plaintiff Sarah C. Fulcher, proceeding pro se, filed suit against the Secretary of Veterans Affairs[1] claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e <u>et seq.</u> ("Title VII") and the Rehabilitation Act, 29 U.S.C. §§ 701 <u>et seq.</u> ("RA"). This matter is now before the court on Defendant's Motion for Summary Judgment and Defendant's Motion to Strike Exhibits Attached to Plaintiff's Response.

I. **BACKGROUND**

Plaintiff is a woman who suffers from Attention Deficit Hyperactivity Disorder ("ADHD"). In June 2000, Plaintiff was

---

[1]Current Secretary of Veterans Affairs R. James Nicholson was substituted for former Secretary Anthony J. Principi as the defendant on June 14, 2005.

hired to work as a police officer in the Police and Security Service of the Veterans Affairs ("VA") Medical Center in Salisbury, North Carolina. Her hiring was subject to a one year probationary period. During this period, Plaintiff received both positive and negative feedback from her superiors.

Plaintiff received negative feedback in the form of corrective counseling on several occasions. In August 2000, Plaintiff was orally counseled by Sergeant Douglas Woodley for feeding stray cats, conducting personal business over her police radio, and failing to follow instructions. In September, she was orally counseled by Sergeant Lisa Foster for tardiness and for Plaintiff's "problems with taking directions from male officers, staff, and patients." (Def.'s Mem. Supp. Mot. Summ. J. Ex. A-3.) In February 2001, Plaintiff received a written counseling statement from Kenneth Johnson, chief of the Police and Security Service, regarding the following: 1) reports from other officers that Plaintiff had stored cat food at the hospital and continued to feed stray cats, 2) a report that Plaintiff had left a jumper cable battery box in the hospital parking lot, and 3) reports that Plaintiff's supervisors had to repeat instructions regarding job assignments and to confirm that the assignments had been carried out. In April, she was orally counseled by Sergeant Foster for being inattentive during an exercise on the firing range.

Plaintiff also received positive performance feedback. Plaintiff successfully completed the curriculum at a VA police training school, including a score in the 90th percentile on the firing range. Additionally, both Chief Johnson and Sergeant Foster believed that Plaintiff showed improvement during her employment period. Finally, Plaintiff received a financial award for her participation in the apprehension of a criminal on VA Medical Center grounds.

After Plaintiff had worked at the VA Medical Center for ten months, Chief Johnson filed a recommendation that Plaintiff not be retained past the probationary period. His stated reason for this recommendation was that Plaintiff was "lacking in police knowledge and concentration in doing her job." (Id. Ex. A-8.) As a result, Plaintiff was discharged at the end of her probationary period.

During her employment period, Plaintiff had several experiences that caused her to believe she was being treated differently from her coworkers. When she was hired, she and another female were given the impression they were responsible for paying for alterations to their uniforms, while male officers hired a short time later were informed they could have alterations done at the VA Medical Center for no cost. Additionally, Plaintiff, another female, and a black male officer were not given keys and Gerber tools that were given to most of

3

the other officers.  Plaintiff felt she was not being treated
with respect by male officers.  Plaintiff was dissatisfied with
the level of supervision and mentoring provided to her by Chief
Johnson.

In addition to these complaints about her work environment,
Plaintiff was unhappy with the way her employer dealt with her
ADHD.  Her supervisors gained information regarding Plaintiff's
ADHD in several different ways.  First, a psychiatric evaluation
of Plaintiff conducted at the beginning of her employment
reported that Plaintiff had been evaluated for ADHD, but the
evaluation had returned negative results.  Second, she personally
informed Sergeant Woodley, as reflected in a "Report of Contact"
that he completed, that she had a condition which caused her to
have "a hard time remembering things."[2]  (Id. Ex. A-2.)  Third,
she personally told Chief Johnson of her ADHD, but during the
conversation, he made no response that indicated he understood
what Plaintiff had said.  Finally, Plaintiff never told Sergeant
Foster of her ADHD; Sergeant Foster did hear about it, but "it
wasn't from any kind of confirmed source."  (Id. Ex. D at 7.)  No
formal effort was made by the Police and Security Service to
accommodate Plaintiff's ADHD.

---

[2]Sergeant Woodley recorded that Plaintiff had informed him
that her problem was a "form of dyslexia."  (Def.'s Mem. Ex. A-
2.)

4

The lack of response to her ADHD, combined with the experiences of unequal treatment, gave rise to Plaintiff's belief that her discharge from employment with the Police and Security Service was unlawfully discriminatory.

**II. STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings and other submissions, viewed in the light most favorable to a plaintiff, show that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). Although the court must view the facts in the light most favorable to the nonmovant, "bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact." Solis v. Prince George's County, 153 F. Supp. 2d 793, 807 (D. Md. 2001). Summary judgment should be granted unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented. McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003).

If the nonmoving party fails to make a sufficient showing to establish an essential element of its case, summary judgment is proper because a "complete failure of proof" on an essential element "renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S. Ct. at 2552. While the court "must take

5

special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 958-59 (4th Cir. 1996) (citing Ballinger v. N. C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987)).

**III. ANALYSIS**

Plaintiff claims that, in discharging her, her employer discriminated against her because of sex, in violation of Title VII, and disability, in violation of the RA. When, as here, a plaintiff lacks direct evidence of discrimination, claims under Title VII are analyzed under the burden shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). The same framework is used for RA claims. See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (applying the framework to Americans with Disabilities Act claims and equating them with RA claims). Under that framework, the initial burden is on a plaintiff to prove a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824. The prima facie case must be proved by a preponderance of the evidence. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996). Once a plaintiff does so, the employer must

6

present a legitimate, non-discriminatory reason for its employment action. McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824. If the employer does so, the presumption of unlawful discrimination created by the prima facie case "drops out of the picture" and the burden shifts back to the employee to show the given reason was just a pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749 (1993); Ennis, 53 F.3d at 57-58.

In this case, Plaintiff has not made a sustained attempt to prove a prima facie case of either sex discrimination or disability discrimination. Plaintiff's memorandum does indicate that she is generally aware of the prima facie case that must be made for each claim, and she briefly states why she believes the elements have been met. Unfortunately, although her conclusions are based upon her own testimony and that of Chief Johnson, she does not offer this testimony as evidence. Further weakening her case, Plaintiff offers no evidence regarding her actions or those of her supervisors and coworkers during her employment,[3] nor does

---

[3]Attached to Plaintiff's memorandum were over 1000 pages of exhibits, apparently representing the research performed by Plaintiff in preparation of her response to Defendant's motion. Of these exhibits, the documents that might be considered evidence were unauthenticated, and therefore cannot be considered by the court in a summary judgment motion. See Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) ("To be admissible at the summary judgment stage, 'documents must be authenticated by and attached to an affidavit . . . .'" (quoting 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 2722, (continued...)

7

she attempt to make use of the evidence offered by Defendant. Additionally, Plaintiff's discussion of the prima facie case makes no reference to the body of law that explains the showing required in this circuit for each element, and, accordingly, Plaintiff does not tailor her argument in a way that would satisfy those requirements. Nonetheless, out of deference to Plaintiff's status as a pro se claimant, the court has examined the exhibits submitted by Defendant for any evidence in Plaintiff's favor.

    A. Sex Discrimination

Under Title VII, "to discharge any individual . . . because of such individual's . . . sex" constitutes an "unlawful employment practice." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discriminatory discharge, a plaintiff must show the following: (1) she is a member of a protected class, (2) her performance in her job was satisfactory, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of the class received more favorable treatment. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). Defendant does not dispute that, as a woman, Plaintiff is a member of a protected class. Instead, Defendant argues that Plaintiff cannot meet her burden as to the other three elements. It is

---

[3](...continued)
at 58-60 (1983 & 1993 Supp.)).

unnecessary for the court to consider the third and fourth elements because it finds Plaintiff has not demonstrated her performance in her job was satisfactory; therefore, Defendant is entitled to summary judgment.

Plaintiff cannot establish a prima facie case without demonstrating that her employer found her job performance to be satisfactory. Although the burden of establishing a prima facie case is not onerous, <u>Texas Dep't of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981), when an employer has "offered substantial evidence that [Plaintiff] was not in fact meeting legitimate job performance expectations, chronicling in detail [Plaintiff]'s poor performance," Plaintiff's unsubstantiated assertions to the contrary are not sufficient to establish a prima facie case of discrimination. <u>King</u>, 328 F.3d at 149. Among the types of evidence a plaintiff might present are past positive job evaluations, testimony of a superior, and expert testimony about her performance. <u>See</u> <u>id.</u> at 148–50. Plaintiff's own perception of her job performance is irrelevant. <u>DeJarnette v. Corning Inc.</u>, 133 F.3d 293, 299 (4th Cir. 1998).

Here, Defendant provides documented instances in which Plaintiff was counseled for inappropriate behavior and unsatisfactory performance at work. Plaintiff does not deny the counseling took place, nor does she deny she engaged in the behavior that led to the counseling. Plaintiff's deposition

indicates that, at the time of the counseling episodes, she did not perceive them to be formal notifications that her performance was unsatisfactory, and she indicates that she did not agree with the weight placed by her superiors on some of the incidents which gave rise to the counseling. Nonetheless, her own perception of the importance of the counseling episodes is not relevant to this inquiry.

Evidence in favor of her job performance is insufficient to outweigh the negative job reviews. She received a financial award for participation in the apprehension of a criminal on VA Medical Center grounds, but this simply indicates she performed well in one situation and does not reflect on her overall job performance. Both Chief Johnson and Sergeant Foster indicated that Plaintiff's job performance improved, but each qualified the praise with a conclusion that the improvement was insufficient to justify retaining Plaintiff past the probationary period. Finally, in her memorandum, Plaintiff alludes to positive performance evaluations (Pl.'s Mem. Against Supp. Def.'s Mot. Summ. J. at 8), which, if offered, might have carried Plaintiff's burden; however, there is no evidence of the evaluations in the record,[4] and the court is unable to evaluate their content.

---

[4] In the portion of the deposition of Lisa Foster offered by Defendant, Sergeant Foster was questioned about the evaluations, but Sergeant Foster expressed only a lack of personal knowledge about them. (Def.'s Mem. Ex. E at 13.)

10

Absent any evidence demonstrating Plaintiff's job performance was satisfactory, the court concludes Plaintiff has failed to establish a prima facie case of sex discrimination, and Defendant is therefore entitled to summary judgment on this claim.

    B.   Disability Discrimination

The Rehabilitation Act prohibits discrimination against a disabled federal employee. Lassiter v. Reno, 885 F. Supp. 869, 872 (E.D. Va. 1995), aff'd, 86 F.3d 1161 (4th Cir. 1996). The RA requires federal agencies "to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities." 29 U.S.C. § 791(b). It incorporates the employment standards of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 122111 et seq. ("ADA"). See 29 U.S.C. § 791(g). To establish a prima facie case under the RA, a plaintiff must allege the following: (1) she was disabled within the meaning of the statute, (2) she is otherwise qualified for the job, and (3) she suffered discrimination due to her disability. Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1264-65 (4th Cir. 1995). Defendant asserts Plaintiff has failed to establish any of the elements of the prima facie claim. It is unnecessary for the court to consider the second and third elements because it finds Plaintiff has not demonstrated she is disabled, therefore, Defendant is entitled to summary judgment.

11

The meaning of "disabled" is the same under both the RA and the ADA. Davis v. University of N.C., 263 F.3d 95, 99 (4th Cir. 2001). An individual is disabled within the meaning of these statutes if she "(1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Id. (citing 29 U.S.C. § 705(20)(B)). While these three statutory definitions of "disabled" are distinct, they share a requirement that the impairment from which a plaintiff suffers, has a record of suffering, or is regarded as suffering, be one that substantially limits at least one of the major life activities. The term "substantially limits" means that a person is unable to perform or is significantly restricted as to the condition, manner, or duration of performance of a major life activity as compared to the performance of an average person in the general population. Rhoads v. F.D.I.C., 257 F.3d 373, 387 (4th Cir. 2001) (citing 29 C.F.R. § 1630.2(j)(1)). "Examples of 'major life activities' are 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Id. (quoting 29 C.F.R. § 1630.2(i)).

Plaintiff has not specified the definition under which she is proceeding in her disability claim. Any of the three is plausible in light of assertions made in the pleadings. The

12

court now considers whether the available evidence supports a conclusion that Plaintiff has met the requirements of any of the definitions.

Evidence in the record is insufficient to establish that Plaintiff is disabled in the sense that she "has a physical or mental impairment that substantially limits one or more of the individual's major life activities." 29 U.S.C. § 705(20)(B)(1). It is undisputed that Plaintiff has a mental impairment in the form of ADHD. However, Plaintiff has not identified a specific life activity limited by her ADHD. Instead, she has asserted it limits all of her life activities because it "makes people think that there is something wrong" with her and because she is "not able to clarify information . . . as quickly as other people." (Def.'s Mem. Ex. C at 31.) According to Plaintiff's testimony, the primary effect of her ADHD is to limit her ability to assimilate and respond quickly to information or instructions when they are spoken to her. She does not have difficulty learning or processing written information; Plaintiff has successfully completed A.A., B.A., and M.A. degree programs. Nor does her ADHD cause her to have difficulty carrying out physical tasks; she exercises, cleans house, and does yard work. In addition, she does volunteer work with an animal shelter and with homeless people. This evidence indicates that Plaintiff does not

13

have difficulty caring for herself, performing manual tasks, walking, seeing, hearing, speaking, breathing, or learning.

There is some evidence to support a conclusion that Plaintiff is limited in the major life activity of working. To be substantially limited in this major life activity, "one must be precluded from more than one type of job, a specialized job, or a particular job of choice. . . . [I]f a host of different types of jobs are available, one is not precluded from a broad range of jobs." Sutton v. United Airlines, Inc., 527 U.S. 471, 492, 119 S. Ct. 2139, 2151 (1999). Plaintiff's inability to process spoken instructions did limit her ability to perform her police work to the satisfaction of her supervisors. There are several documents from her personnel file that report instances in which Plaintiff failed to respond to spoken instructions or in which instructions had to be repeated. One of the reasons given for her discharge was a lack of "concentration in doing her job." (Def.'s Mem. Ex. A-8.) Nonetheless, this evidence is insufficient to establish that Plaintiff was substantially limited in her ability to work. The evidence relates only to police work, which is a field with specialized requirements that may be particularly unsuited to Plaintiff's impairment. There is no evidence available regarding Plaintiff's ability to perform other jobs with different requirements; therefore, the court

14

cannot conclude that Plaintiff was substantially limited in the life activity of "working."

Plaintiff would still be considered disabled under the RA if she "has a record of" a disability. 29 U.S.C. § 705(20)(B)(2). To demonstrate a record of disability, Plaintiff must "establish that she had 'a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" Rhoads v. F.D.I.C., 257 F.3d 373, 391 (4th Cir. 2001) (quoting 29 C.F.R. § 1630.2(k)). Like the first definition of "disabled," this definition requires that the impairment substantially limit major life activities. Id. To the extent that the evidence in this case touches upon Plaintiff's history prior to her employment at the VA Medical Center, it indicates only that she was diagnosed with ADHD in 1999. There is no additional information indicating negative effects on Plaintiff's life, and without such information, it is impossible to conclude that Plaintiff's record was one of having been substantially limited in any major life activity; thus she is not disabled under this definition.

Finally, Plaintiff may still be disabled within the meaning of the RA if she "is regarded as having" a disability by her employer. 29 U.S.C. § 705(20)(B)(3). "[A] person is 'regarded as' disabled . . . if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits

15

one or more major life activities." Murphy v. United Parcel Serv., 527 U.S. 516, 521-22, 119 S. Ct. 2133, 2137 (1999). The focus in this inquiry is on the perception of Plaintiff's employer.

Nothing in the record suggests that any of Plaintiff's superiors regarded her as unable to participate in a broad subset of available jobs because of her ADHD. Defendant's exhibits reveal no instance in which anyone expresses an opinion on Plaintiff's ability to work, other than that she had not performed to certain standards in her job as a police officer. Given this situation, Plaintiff has not demonstrated that she was regarded as substantially limited and thus disabled for RA purposes. In the absence of a showing by the preponderance of evidence that Plaintiff is disabled, Plaintiff cannot prove a prima facie case of discriminatory discharge under the RA, and Defendant is entitled to summary judgment on this claim.

**IV. CONCLUSION**

Plaintiff has failed to establish a prima facie case for either a discriminatory discharge claim based on sex discrimination or such a claim based on disability discrimination. For this reason, the court will grant Defendant's summary judgment motion as to all of Plaintiff's claims. Accordingly, Defendant's Motion to Strike will be denied

16

as moot.  A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 21st day of September 2005.

_____
United States District Judge